E-FILED
Monday, 22 June, 2026  03:43:35 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| GREGORY SPENCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:25-cv-04046-MMM |
| | ) | |
| TYRONE BAKER, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, proceeding pro se and presently incarcerated at Hill Correctional Center, alleges violations of his Eighth Amendment rights. Plaintiff has been granted leave to proceed *in forma pauperis*. The initial complaint was dismissed for misjoinder of claims. Plaintiff has been granted leave to amend, and the amended complaint significantly narrows the parties and claims he pursues. This order follows.

The court must "screen" Plaintiff's amended complaint and identify and dismiss any legally insufficient claim. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff now names four Defendants: Hill Correctional Center Warden Tyrone Baker, Hill security staff members Bradley D. Bowen and Martin Matherly, and Mental Health Professional Natalie Main.

Plaintiff includes sparse allegations related to complaints and correspondence with Warden Baker regarding unspecified harassment, assault, and retaliation by unspecified correctional staff, between September 9, 2024, and November 15, 2024, and asserts that Baker broadly disregarded and dismissed these complaints.

Plaintiff's core allegations relate to the events of December 2 – 5, 2024.

On December 2 at about six in the morning tact team officers came on Plaintiff's housing unit, made a lot of noise, turned on the lights and woke everyone up, opened Plaintiff's cell door, and directed Plaintiff and his cellmate to cuff up. Plaintiff and his cellmate were then strip searched in the cell in each other's presence as directed by Defendant Bowen. Other correctional officers including female correctional officers were also present though not necessary to the strip search.

Plaintiff is diabetic and felt dizzy because he had not eaten, he told Bowen as much and Bowen said, "too bad" and to keep walking. Plaintiff was held briefly in the dining hall then taken to segregation and separated from his cellmate and placed in the shower. He was feeling dizzy again and told officers, who ignored Plaintiff.

The officers commanded Plaintiff to remove his clothes and turn them over. Warden Baker was present, Plaintiff spoke to him, and Baker acknowledged Plaintiff, Plaintiff explained he had just been strip searched, and Plaintiff was then strip searched

again, plausibly in Baker's presence immediately after this discussion. Other inmates could watch Plaintiff being strip searched.

Plaintiff was tightly handcuffed by an unspecified individual, causing extreme discomfort and pain for an unspecified period. He was put in a crisis cell for ten minutes then handcuffed again and put in another cell. At about 1:30 p.m. he was escorted for an interview by Internal Affairs. He was informed a weapon was found in his cell and the interviewers tried to get Plaintiff to implicate his cellmate in possession of the weapon. Plaintiff refused because that was false. Plaintiff insisted instead that Bowen planted the contraband in his cell. He was then escorted back to a cell, apparently in the segregation/restricted housing unit. Plaintiff submitted a request to mental health.

On December 3 Officer Porter gave Plaintiff such of his property as was allowed in segregation. Plaintiff enquired about his other property and was told the tact team likely discarded it. Plaintiff filed three emergency grievances. Plaintiff received two disciplinary tickets by Bowen and another officer, Noah Gibson, which were false.

On December 4 Plaintiff was feeling suicidal due to the events described above and because of a family death. He told correctional officers Porter and Cox he needed a crisis team but was ignored. He called out to Lt. Matherly and MHP Natalie Main and was ignored. Later that day Plaintiff asked correctional officer Dickinson to use the phone, Plaintiff was told he had to be in segregation for seven days before he could use the phone, Plaintiff said his property was missing and he needed to talk to a lieutenant, and Plaintiff was ignored.

On December 5 tact team officers performed a shake down search in segregation. Plaintiff was removed from his cell, handcuffed, taken to the other side of segregation, instructed to sit in a chair with his hands cuffed behind his back, then escorted to the segregation shower where he was held for fifteen minutes. Plaintiff saw Bowen harassing and threatening other individuals. An unspecified tact team officer then again strip searched Plaintiff despite Plaintiff's objections. Individuals in their cells were observing Plaintiff during the search. Unspecified officers then tightly cuffed Plaintiff behind his back causing pain. He was also again feeling dizzy. He was told he would get over it. He was returned to his segregation cell.

The tact team had removed Plaintiff's writing pens, envelopes, diabetic medication, breakfast tray, and snack bag. He felt disoriented and knew his blood sugar was dropping. He called out to Matherly, Baker, and Christine Brannon-Dortch, who were nearby. Matherly came over and Plaintiff explained the things the tact team had taken, Matherly said to drink some water and he would be fine. Baker and Brannon-Dortch looked away. Plaintiff then lost consciousness. Tact team officers placed Plaintiff in a wheelchair, a nurse named Jen said "I should push his ass into a wall," and correctional officers Drifill, Mccutchen, and several other officers laughed and said Plaintiff was faking having passed out. Plaintiff was taken to the health care unit and attended by Nurse Katherine Maple and an unknown nurse who checked his blood sugar which was at sixty-nine. Maple told Drifill nothing was wrong with Plaintiff, and Plaintiff was provided a snack bag and sent back to his cell. He saw Natalie Main and

tried to call out to her but she ignored him. Plaintiff wrote two emergency grievances, one against the tact team and one against Nurse Maple.

On December 11 Plaintiff was on a video call with his wife, Natalie Main mockingly said, "tact team took my stuff," and correctional officers laughed. At about 1:36 p.m. adjustment committee members came to Plaintiff's cell and conducted a disciplinary hearing for the tickets written by Gibson and Bowen. Plaintiff pleaded not guilty and the charges were dismissed. He was given the rest of his personal property and found that all the photos of his deceased brother had been torn in half and much of his property was missing, which Bowen did deliberately after the disciplinary charges were dismissed.

Plaintiff lists the claims he wants to pursue. They fall into two groups.

One group of claims relates to the multiple strip searches he underwent, in open areas in the view of others without penological basis, at least one of which was effected by Bowen and at least one of which occurred with Baker present and with his knowledge. These allegations state plausible Eighth Amendment claims against Defendants Baker and Bowen for potentially unlawful strip searches. *See Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009); *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012); *May v. Trancoso*, 412 F. App'x 899, 903 (7th Cir. 2011) (presence of female spectators can support inference of intended humiliation). These are the only two Defendants who are alleged to be personally involved (or to have turned a blind eye) to the questionable strip searches.

The second claim Plaintiff pursues is for the intentional destruction of his property by Bowen after he was found not guilty on the disciplinary tickets. These allegations do not state a claim. There is no indication this destruction of property was authorized by prison administrators or done pursuant to any sort of order. Instead it is a paradigm example of an unauthorized property destruction. The unauthorized—negligent or intentional—loss, confiscation, or destruction of a prisoner's personal property does not violate due process where state law provides a meaningful post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In Illinois, a prisoner has an adequate remedy available to him in the Illinois Court of Claims. *See Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993) (citing 705 ILCS 505/8).

Plaintiff discusses actions by other individuals but does not identify any claims he wants to pursue against them. And based on the sparse nature of the allegations there are no other claims plausibly alleged in the amended complaint.

**IT IS THEREFORE ORDERED:**

1.      **Pursuant to its merit review of the Amended Complaint under 28 U.S.C. § 1915A, Plaintiff states Eighth Amendment claims against Defendants Baker and Bowen based on the strip searches. Any additional claims against any other Defendant shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15. Clerk to terminate Defendants Matherly and Main.**

2.      **This case is now in the process of service. The plaintiff is to wait until counsel has appeared for the defendants before filing any motions, so defense counsel receives notice of such filings. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the court.**

3.      The court will attempt service on the defendants by mailing each defendant a waiver of service. The defendants have 60 days from the date the waiver is sent to file an answer. A motion to dismiss is not an answer. If the defendants have not filed answers or appeared through counsel within 90 days of the entry of this order, the plaintiff may file a motion requesting the status of service. After the defendants have been served, the court will enter an order setting discovery and dispositive motion deadlines.

4.      With respect to a defendant who no longer works at the address provided by the plaintiff, the entity for whom that defendant worked while at that address shall provide the clerk said defendant's address, or, if not known, said defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the clerk and shall not be maintained in the public docket nor disclosed by the clerk.

5.      This district uses electronic filing. After defense counsel has filed an appearance, counsel will automatically receive electronic notice of any motion or other paper filed by the plaintiff with the clerk. Plaintiff does not need to mail to defense counsel motions and other papers that the plaintiff has filed. This does not apply to discovery requests and responses. Discovery requests and responses are NOT filed with the clerk. Plaintiff must mail discovery requests and responses directly to defendants' counsel. Discovery requests or responses sent to the clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the court has entered a scheduling order.

6.      Counsel for the defendants is hereby granted leave to depose the plaintiff at his place of confinement. Counsel for the defendants shall arrange the time for the deposition.

7.      The plaintiff shall immediately notify the court, in writing, of any change in his mailing address and telephone number. The plaintiff's failure to notify the court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

8.      The clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Entered this 22 day of June, 2026.

s/Michael M. Mihm

MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE